Our next case for argument this morning is Elliott against the Board of School Trustees. Mr. Fisher. Thank you, Your Honor. May it please the court, in 1938, the Supreme Court in Anderson v. Brand said that Indiana's teacher statutes created contracts. But that only means that Indiana cannot subject established teachers to at-will dismissal. No precedent says that such unusual rights must extend to priority over better teachers during a legitimate reduction in force. Brand itself acknowledged that permanent status was subject to legitimate reductions in force. So, accordingly, even though Brand remains the Supreme Court's determination, there are two ways to rule in favor of Madison Consolidated School Corporation and to uphold the reduction in force statute as applied to Elliott. First, is to hold that Brand means only protection against at-will dismissal. Or, at the very least, does not mean immunity against foreseeable changes to RIF priorities. Second, to hold that any substantive impairment of Brand-protected rights is justified by the state's compelling interest in improving student educational outcomes. Indeed, with respect to the latter rationale, we think we have achieved narrow tailoring. I want to make sure I understand what Indiana is arguing and what it is not. Are you making any argument based on Carter against Greenshell? No. Are you making any argument, any other variety of argument, that a claim of this sort is not properly in federal court, but is in state court? And, indeed, Madison removed the case to federal court. It had been initially With respect to narrow tailoring, we are, I think, in a world here where the district court said that the more narrowly tailored option here would have been to dismiss Elliott for cause in the midst of a reduction in force. In other words, to come up with reasons why he was a poor quality teacher, an unqualified teacher. In our view, that would be a far drastic remedy than to really apply the reduction in force priority set forth in the statute. And, indeed, in any given case could be uncovered as a sham in the course of review of the for cause dismissal. So the other thing to bear in mind, I think, about the narrow tailoring of the statute is that within the same performance category, if you have different levels of performance that come through the reviews of the teachers, within the same performance category, seniority and performance are both taken into account. So it's not as if seniority is out the window in all cases. So in any event, whether it's because Brand doesn't reach this far or because the state has a substantial overriding interest in terms of applying the statute to an established teacher, we think that the state can apply this statute, or the school corporation can apply this statute, to an established teacher. In fact, you know, as... The brief seems to ask us to sidestep Brand and to treat it as dead letter. Well, I think what we're pointing out is that Brand has some formalistic qualities to it, that other states and other courts have been able to marginalize it so that they can achieve legitimate educational objectives notwithstanding permanent status. Obviously, we can't ask this court to overrule Brand. It's the law. We've come pretty close to it. Well, I think what we're doing there, Your Honor, is we're trying to set the stage that if there's a conclusion that Brand does control and precludes this, ultimately we're going to have to ask the Supreme Court to overrule it. I don't think that's necessary. I think Brand is only a determination that the legislature cannot wipe out tenure completely. Another option, the district court didn't talk about it, but another option, if you're unhappy with Mr. Elliott's performance in the classroom, although I gather he mainly seemed to be chosen for this not because he wasn't effective in the classroom, but because he wasn't popular with, or sufficiently soft-hearted to students, or popular with his colleagues. At least that's an argument that can be made. Another option would simply be to buy out a teacher who has tenure rights that you're trying to take away. Well, but of course, the whole reason for the reduction of force is that you're trying to save the costs, and I think that's an unnecessary cost imposition. It depends. If we look at the Supreme Court's more recent contract clause cases, the ones I'm focusing on in particular, the U.S. Trust Company case and Allied Structural Steel, we have the court telling us that reliance interests, expectation interests of bondholders and employers are protected under the contract clause, even if it's more expensive to do so. And I guess I'm not clear on why reliance interests of employees who build careers on the expectation of somewhat lower salaries but greater job security are not also entitled to similar protection. Well, I think in certainly the U.S. Trust Company case, I think the focus there was on sort of the self-interestedness or the self-dealing of what the government was trying to do. It wasn't just reliance interests. Well, okay. You would agree that education is a constitutional obligation of the state of Indiana? Absolutely, I would. Why is this not, in essence, the state restructuring the contracts of its own agents to carry out that constitutional mission? That is, undoing the contractual protections provided to teachers who are employed to carry out that mission by local school boards. Well, I think what we've got from U.S. Trust is a recognition that there are legitimate public policy interests and then there are more sort of self-interested financial interests that we can divide the world between those two in some rough sense. And this is because it's in pursuit of achieving that legitimate, that compelling, that required educational, public educational obligation of the state, I don't think can be fairly categorized as something similar to what was going on in U.S. Trust. Now, I mean, even if you've got a policy change, respecting the contractual rights of teachers with tenure in this situation would cost some extra money. And the state has for generations promised teachers this form of security. You won't be fired without good cause in your individual case. We have this exception for reductions in force, but since 1938, 1939, the statute has been interpreted definitively by the Indiana Supreme Court to say that you can't fire qualified tenured teachers before you fire or lay off untenured teachers. We had a Indiana Supreme Court determination that that's what the prior statute meant. Now bear in mind, and if we're talking about the Watson case, I assume that you're referring to, in that case it wasn't pursuant to the statute and the specifics of the statute. You had there a township trustee or a township board, some local official, making things up as that person saw fit, and the court saying that's not authorized by statute. And that, I mean, that's been... Right. I'm saying that the tactic that the state is trying to defend now was contrary to the contractual promises that were made in the statutes in the earlier versions. Well, another way to look at Watson as well is to say that, is to observe that there was no discussion of whether there were performance measurements in place that were the basis for distinguishing between the tenured and the untenured teacher. All you have there, really in some ways, is exactly what the Supreme Court was talking about in Brand when it said that the point of tenure is not to permit personal decisions or even political decisions. From all we know in Watson, that was the reason for it. And Watson makes it very clear that you would undo the effect of that statute completely if you allow free rein in selecting people for reductions in force. In free rein. Right. This is not free rein. We're not talking about free rein. We're talking about a systematic process for evaluating teachers. And Watson wasn't confronted with that scenario. It was confronted with a much more sort of arbitrary or, you know, sort of ad hoc scenario. Now, beyond that, in terms of the expectations that have gone into this, with respect to Elliot or many other teachers, I'm not aware of any circumstance where Elliot was teaching where Madison went through a reduction in force so he was able to depend on or come to be guided by the prior RIF procedures. So I think it's a little bit, I don't know, I guess it's a little bit implausible to suggest that they... Teachers and their unions are entitled, well, aren't they entitled to rely on Watson? Now, not new teachers, agreed. But, look, we both know that teachers are paid based heavily on seniority, right? And if somebody deep into his career with a particular seniority in a school district, like Mr. Elliot, has to start over again, it's going to be in another district, it's going to be at a deep discount, right? And the longer he stays, the more he's relying on this assurance that if you're going to RIF people, you're not going to RIF the tenured folks, unless you've already RIFed the non-tenured folks. Well, I don't think Watson gives us quite that much on one hand. I think it talks about in terms of sort of arbitrary or personal decisions. It doesn't tell us exactly all of the dimensions of what the RIF has to be. You read Watson as not applying then to, at least if you introduce enough formal processes and factors and mathematics. Well, yeah, I think what Watson, all Watson tells us, all we can infer from Watson is that scenario where there doesn't appear to have been any evaluative process, any evaluation of performance that was at play. So I think, you know, we need to keep it there. And I think beyond that, you know, if we're going to suggest that there is a reliance interest at stake, a legitimate reliance interest at stake, then it's merely a matter of whether the state has a sufficient overriding policy justification in terms of benefiting the education of students. Mr. Elliott was the local teacher's union president. I think that's right. And he was chosen for layoff. That's a pattern that's pretty familiar under federal labor law as posing a problem. I don't think it has much to do with the constitutional issue that's being argued here, but it has a lot to do with the state court claims. Right. If we were to agree with you on the constitutional claim, what do you think we should do with the state court claims? I think they, I don't think the court should address them. I think they should be, as the district court did, remain dismissed, subject to Elliott, whatever rights Elliott has to refile in state court. Do you think he has a right to refile in state court? I can't speak for... Just to remand, all it needs to be is, they just need to be remanded, right? I don't think so. Since you guys removed the case. True, but I'm not, if all the federal claims are resolved, I'm not sure that it's a sound basis for federal jurisdiction to continue on with the state law claims, purely state law claims. I'm suggesting, if we were to agree with you on the constitutional, federal constitutional claim, the appropriate step would be to remand the district court with instructions to remand the state court for proceedings on the state law claims. Fair enough. I think, as a technical procedural matter, I'm not sure that's necessary. My suggestion, of course, would be to certify the state law question about the meaning of Watson to the Supreme Court of Indiana. Do you have any view on that? I don't, I guess I don't think that's necessary, precisely because even... That's because you think you win. Right. Usually, when I ask this question, most lawyers answer that my priorities are win, certify, lose. Right, well, I'll stick with that, but in terms of the certification, you know, I don't know how the Indiana Supreme Court would receive that, obviously. I think, with respect to trying to sort out the meaning of Watson, they're, you know, they're going to see that and, well, I can't, I can't explain what they're going to see on that. I guess I, I don't have much of a response other than to say we think we don't need to do it. But, Your Honor, if I could go back, I'm not sure this really matters. I'm not sure that you have to remand for a remand. Maybe that would be okay. I mean, I don't have any objection to that. All I'm observing is that the district court dismissed those state claims as moot, and they could just be refiled on their own. Well, I, what I'm, what I'm concerned about in that scenario is defense counsel arguing that there's been some kind of passage of time or some other obstacle to reviving claims in state court, whatever the procedural method would be. Right. If you can tell me that you would, that there would be no such objection, that would be a comfort. Otherwise, I'll have to worry about the technicalities if we were to go in that direction. I can't, I can't represent that because I don't represent the school. You're arguing for them, but I understand you don't have that. Okay. That's fair enough. Yeah. Okay. Does, does, how does this, how do the state's arguments here under the contract clause, how do they apply, for example, to police officers, deputy sheriffs, and firefighters in Indiana who have comparable tenure protections? Well, I, I, well, I, I, with respect to those, and again, this may sound formalistic, but with respect to those officials, we don't, or those, those employees, we don't have the same starting point of brand. And I think what other decisions in other states have told us is that brand has effectively been there to an Indiana teacher scenario. So, with that, I'll. Thank you. Thank you. Thank you, Mr. Fisher. Mr. Walton. Good morning. And may it please the court, I'm Jason Walton. With me at council's table are Eric Hilton and Kristen Holler, and we are here representing Plaintiff Appellee Joseph Elliott, a teacher of nearly 20 years' experience who prevailed below in showing that his contract rights as a tenured teacher under Indiana law were unconstitutionally impaired when he was terminated from his teaching job during a reduction in force. There is one issue I would look, that took up a bit of time on the other side's argument that I'd like to turn to very quickly, which is kind of what are the contours of this contractual right that, that Mr. Elliott has. And by the way, just as, as a matter of interest, is Mr. Elliott's contract in the record? Well, his, his, his, his indefinite, his indefinite contract is in the record by virtue of it being in the statute books. I mean, that is the source. No, no. He, I gather from the briefs that he actually gets a piece of paper called contract every year. Correct. And that document could incorporate the 1927 statute, waive rights under the 1927 statute. It could do a whole bunch of things. What does it do? Since we don't have it, it, it's really weird to have a case arising under the contracts clause of the U.S. Constitution where the contract isn't in the record. It, it, it is in the record and I, and I, I may even have the, the record site for you. I tried to find it in the record. But there are two contracts here. There, there is an indefinite contract which establishes his basic entitlement to tenure. No, look, look, look. I want to see the document. I tried to find it in the record and couldn't. If it's in the record, any of them in recent years, would you file copies with the Court of Appeals? It is, it is in the record. I, I, I, and I'm happy to show it to you. I would, I would love to see it. To know what it says about rights under the 1927 statute or for that matter the 2011 statute. But, but it's, but the overriding point is that there are two contracts here. And that the Chamber's case. You know, you must not have been listening to my question. A document can waive rights under a statute. People waive rights under statutes all the time. It seems weird to say, well, the statute is read into the personal contract without seeing the contract to see whether it incorporates the statute or waives rights under the statute or draws cartoons about the statute. Sure, sure. I want to see the document. And the document is in the record and I am happy to point you to it. But it is worth emphasizing that in Chambers, the court, the state court said that the definite contract cannot supersede the protections of the indefinite contract that's created by the statute. And that is a matter of state law. And so you have these two contractual regimes that exist side by side. You have the indefinite contract that provides the basics of tenure. In Indiana, it would be illegal for a teacher to negotiate with a school district and say, what I would like is less tenure protection and more salary. That would be illegal in Indiana. The definite contract, which I think is the contract that you're talking about here. The answer to my question is yes or no. Is that it's a standard contract throughout. They aren't negotiated individually. It's a standard contract that is created by the superintendent of the school district. Could a local school board contract its way around the tenure statute? It cannot. And that's what the Chambers case says. So the answer to Judge Easterbrook's question is yes? Is yes. It just required a simple answer. Right. So the definite contract cannot supersede the protections of the indefinite one. And even if a school board is willing to offer money to school teachers and they want to take the money, Indiana law just prevents them from making that deal. The purposes of the indefinite contract are very circumscribed by state law. I just care what Indiana law provides. The reefs are full of arguments about purposes and what is good public policy, which have nothing to do with our case. But clearly, in this case, they did not. There was no individually negotiated contract that says, we understand we're buying you out of your rights under Watt's counsel. You may know, but I don't know until I've seen the contract. And that is in the record and I assure you we will point you to that. But in terms of what the contours of that contract are, you know, the state looks at Brand and says, well, it's just this kind of vague abstraction of what the tenure statute actually says. It's not the actual terms of the tenure statute. It's just a kind of generalized right to not be terminated for kind of arbitrary and capricious reasons. But U.S. Trust was very clear on this point. It said that you look at the specific terms of the statute here, the statute of the contract, and that's the statute. And then it also says that the contract includes not only the expressed terms, but also the contemporaneous state law pertaining to the interpretation and enforcement of the contract. That's from footnote 17 of U.S. Trust. And here, the contemporaneous interpretations of state law are Watson. And Watson announces a rule. And the rule that Watson announces is that a tenured teacher cannot be laid off in a reduction in force over a non-tenured teacher in a position for which that tenured teacher is qualified. And Watson is not some kind of one-off old Delphic decision. It is followed again and again by the Indiana courts, including the Stewart case that's cited in our brief. And so it lays down this rule that is incorporated into the contractual protections that he has. And so that is the contract that he had. And the district court correctly found that there was a substantial impairment of that 2011 statute, which as the state asserts, did away with the protections of Watson and said that teachers, tenured teachers, did not have any priority over non-tenured teachers in the event of a layoff. And finally, the impairment created by the 2011 law was not reasonable or necessary to serve a significant public purpose, most fundamentally because, you know, the state's interest in force, in attracting and retaining competent teachers, this was a longstanding concern. These issues were already kind of subsumed within the original contract. This is not a situation where some... I understand those as policy arguments, and I guess what gives me most pause is that the Supreme Court jurisprudence under the contract clause, which invites us to consider whether the steps are reasonable and necessary, seems to invite us to become educational policy makers. Well, I don't think so, because I think that, you know, the concern about attracting and retaining a quality workforce have been in existence. They were in existence when Brand was decided. They were in existence when Bruck was decided. I mean, the fundamental issue in all of those was how do we attract and retain good teachers? And so all of those have already been considered in the contract itself. And U.S. Trust, you know, essentially says that when that has taken place, when the contracting parties have agreed over these issues, it is not up to the state to kind of revisit them and impair the contract on that basis. And you know, for example, the Chief Justice in U.S. Trust, in his concurrent, and he was very clear, he said that the state must show that it did not and could not have known the impact of the contract on state interests at the time that the contract was made. And here, you know, the underlying purpose of tenure is to make a bargain with teachers that you will be part of our stable and competent workforce, and in exchange for that, you will get job security and we will pay you less. And so the contract should remain in force unless there are some kind of unforeseeable or unforeseen circumstances that really call for a change in it that would necessitate an impairment. And I think the confounding thing about the state's position here, and this is something that you remarked on, Judge Hamilton, is how little regard they show for the controlling cases like Brand and Watson, and really how little regard they show for the animating principle of the Contracts Clause. You know, at the most basic level, the Contracts Clause means... Well, you must concede that Brand is not close to what the Supreme Court would say now, and it has the curious effect that there is a teacher tenure system as a matter of constitutional law in Indiana, but not in any of the other 49 states. Well, I don't think that's true. I mean, both Minnesota and Alabama have followed Brand and said... In fact, they can do whatever they want as a matter of their domestic law, but the current Supreme Court view is that statutes are not contracts, and statutes can be freely amended at any time without violating the Contracts Clause. Well, I would disagree... That may be good or bad, but it is their current view. Well, I would disagree that Brand is the product of some time when statutes were routinely treated as creating contracts, because in Phelps, the year before... Again, you're not listening. I may think that Brand is right and the modern jurisprudence wrong, but in fact, my statement about the modern jurisprudence is accurate. It may be good, it may be bad, it's just what the Supreme Court thinks. Yeah, but Brand is really about... They kind of reduce it to formalism, but this is a situation where form matters. The year before Brand, in the Phelps case, the court looked at the New Jersey Tenure Statute, and they looked at that and they said, we do not generally consider statutes to be contracts. This is not a statute that speaks in terms of contract. We're not going to treat it as a contract. And so even before Brand was decided, the very year before in Phelps, they said, the New Jersey Statute does not create contract rights. It was the specific features, and this is why form matters, the specific features of the statute in Indiana that the court held that it created contract rights. And so what I think Brand stands for and continues to stand for is that the court is not going to lightly infer that a contract has been created, but when the legislature speaks in very specific terms indicating that it's creating a contract, that will enjoy the protections of Article I, Section 10. And I want to remark on the kind of sense of unfairness that comes through in the state's brief. Brand has been on the books for a long time. They have revisited, reenacted, recodified their tenure law many times since then, and even expanded it, all with the full knowledge of the contract rights that Brand creates. At any time, they could have created a different statute that would have operated prospectively that would have made tenure purely statutory. They can do that today if they like. The legislature has always operated with full knowledge of what it's doing in terms of creating these contract rights. And so the sense of unfairness, I think, is unjustified here. To what extent, maybe this is what you're referring to, but to what extent does your argument depend upon reliance interests? Well, I think the reliance interests here are incredibly strong. You have an unbroken line of cases from Brand until the present saying that Indiana teachers' contractual tenure rights will be honored. They said, and you have Brand, you have Bruck where the Indiana Supreme Court essentially read changes to operate only prospectively. And so an Indiana teacher has that kind of full knowledge of Brand, Watson, Bruck, all of which say that your rights as a tenured teacher are contractual in nature, they're going to be honored and they're not going to be impaired, and that any changes to the tenure regime are going to operate prospectively, but that your rights that you obtained when you got tenure will continue to be honored. I want to remark just a little bit about what to do with the state claims. I want to dispel the idea that we were required to file a cross-appeal. The judgment here was a money judgment. The alternate state law grounds for affirmance would give us that same money judgment. I think if you look at cases like Weisenkamp, it's very clear that the bottom line here, the judgment, would remain the same under our alternate grounds for affirmance. There's some question about the attorney's fees, but that's really a separate judgment. I think that I would have gotten the pinata treatment up here if I had tried to cross-appeal and gotten more pages and a separate appeal to try to ask for a judgment that gave me the exact same relief as the judgment I already got. This court reviews judgments and not statements and opinions, so I think those issues are clearly before the court should they want to reach them. In your argument on the state law claims, we have the hot dispute about Mr. Elliott's virtues and vices as a teacher and potential administrator and so on. Would you agree with me that those virtues and vices don't have anything to do with the federal constitutional claim? I think that's exactly right. Those really deal with the substantial evidence claim. Did anybody suggest to the district judge that he might have wanted to remand the state law claims to state court and stay the federal constitutional claim pending those decisions? No, that suggestion was never made. The main fight in this case has always been over the contracts clause claim and it was removed from state court. We could have gotten it back in state court, I assume, by just dismissing our federal contracts clause claim and pursuing a claim under the state analog. So both parties have been content to have the federal courts decide both the federal and state law issues throughout the case. So if you have no further questions, I thank you for your time. Thank you very much. The case is taken under advisement. Our next case for argument this morning is